994 F.2d 136
 16 Employee Benefits Cas. 2420
 Donald R. KURZ; William W. Anderson; James W. Beck;
William T. Bergen; Charles W. Bowden; William H. Brown;
Richard Cahill; Armando L. Capoferri; Robert C. Demarco;
James J. Dilolle, Sr.; Vincent J. Dimaggio; John J.
Divalentino, Jr.; William E. Drumel; Victor J. Gibialante;
Francis T. Golden; James J. Granger; Elmer D. Greim, Jr.;
James H. Hair; John M. Hoopes; Benjamin J. Kilian;
George C. Linthicum; Hubert A. McKown, Jr.; Henry P.
McNamee; Oliver K. Messner; Robert E. Miller; John A.
Morse; Samuel J. Mullen; John A. Munley; Stanley B.
Myers; John J. Nusspickel; James W. Patterson; Alfred B.
Schumann; Joseph C. Sharkey; William H. Smoyer; Woodrow
E. Snyder; James D. Sutliff; Edward J. Vetner; Dominic C.
Viglianese; G. Earle Watt; Frederick W. Winterling; John
R. Young, Appellants,
v.
The PHILADELPHIA ELECTRIC COMPANY; Service Annuity Plan of
Philadelphia Electric Company; Charles L. Fritz,
J.L. Everett, III; John H. Austin, Jr.,
Appellees.
 No. 92-1685.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 26, 1993.
Decided May 26, 1993.
Sur Petition for Rehearing July 20, 1993.
 
 Ronald L. Wolf (argued), Martina W. McLaughlin, Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for appellants.
 David H. Marion (argued), Elizabeth A. Read, Kimberly H. Humes, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for appellees.
 Before: MANSMANN, SCIRICA and FEINBERG,* Circuit Judges.
 OPINION OF THE COURT
 FEINBERG, Circuit Judge:
 
 
 1
 Donald R. Kurz appeals on behalf of a class of former employees of the Philadelphia Electric Company (PECo or the Company) from an order of the United States District Court for the Eastern District of Pennsylvania denying his motion for summary judgment and granting that of PECo.[1] Kurz alleged that the Company violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The issues before us are similar to those raised in Fischer v. Philadelphia Elec. Co., 994 F.2d 130 (3d Cir.1993), which we also decide today. This appeal, like the appeal in Fischer, primarily requires us to decide whether summary judgment for PECo was proper on the record before us.
 
 Background
 
 2
 On behalf of its employees, PECo administers an employee pension benefit plan known as the Service Annuity Plan (the Plan), the same plan at issue in Fischer. To keep track of how the Plan compares to those of other utilities, PECo has from at least as early as 1977 participated in annual or bi-annual surveys of employee pension benefits offered by companies in the utility industry. These surveys were conducted by the Public Service Electric and Gas Company before 1986 and thereafter by PECo itself. At least once in the past, PECo amended the Plan to increase benefits after one such survey showed that PECo's benefits were comparatively low. The Pension Survey Report for the year 1986 would be issued sometime in 1987.
 
 
 3
 Throughout 1986 and into 1987, the Independent Group Association (IGA), a PECo employee organization, expressed concern to the Company about the Plan and pressed for improved benefits. In March 1987, Charles L. Fritz was Vice-President of Personnel and Industrial Relations and Chairman of the Service Annuity Board. Fritz responded to IGA's concerns and met with its Executive Committee to discuss the Company's wage and benefits package expected later in the year. In the course of that meeting, Fritz "remarked generally that the timing was right to make a significant change to the pension plan and that [the Company] had been looking at different ways of making a change to the pension [plan]." Discussions about proposed changes to the Plan continued at another meeting held the following month.
 
 
 4
 Meanwhile, as early as February 1987, the actuarial firm of Towers, Perrin, Forster & Crosby (TPF & C) had been put to work by PECo to evaluate a formula to change the Plan to enhance benefits. In March, TPF & C Vice-President Donald Fleischer held a meeting at PECo to discuss the alternative formulas to be considered, some of which TPF & C started "pricing" or "costing out." Officials from TPF & C and PECo held what was apparently a final meeting around May 20, at which time various alternatives were discussed. On May 22, TPF & C sent PECo Vice-President Fritz a letter summarizing the firm's comments, recommendations and conclusions.
 
 
 5
 On that same day, PECo issued its 1986 Pension Survey Report comparing PECo's benefits to those of other utility companies. According to one official in PECo's Personnel and Industrial Relations Department, the Report showed that PECo "was below the midpoint and significantly below the midpoint for all management cases." In other words, compared to other utility companies, the pension benefits offered by PECo "had become fairly non-competitive." The Report concluded that "the time for a pension change ... had arrived" and recommended adopting one of the proposals on which TPF & C had been working.
 
 
 6
 Based on this recommendation, Fritz requested and obtained permission from J.L. Everett, III, then PECo's Chief Executive Officer, and John H. Austin, Jr., then PECo's President and Chief Operating Officer, to recommend a change to the Board of Directors. Thereafter, a formal proposal to change the Plan was made to the Board and approved on June 22. The change was announced in the Company's official bulletin on July 2. The improvement to the Plan provided a substantial increase (approximately 17.6%) in the pension for those employees with over 40 years of service who retired at age 65.
 
 
 7
 In accordance with Company policy, all studies relating to the proposed change had been kept confidential, at least until the change was formally adopted. As in Fischer, this policy of confidentiality, which plaintiffs describe as a "conspiracy of silence," extended even to PECo's benefits counselors, whose job it was to provide prospective retirees with information about retirement benefits. Like the plaintiffs in Fischer, members of the plaintiff class here attended individual retirement interviews, the majority of which were conducted by Senior Benefits Counselor Jack McCartney. During these interviews, some class members asked the counselors whether or not any change to the Plan was being considered. The benefits counselors, however, knew nothing of the change until it was announced. Indeed, they had been instructed "to give employees the facts as of [the time of the interview], and ... not to speculate."
 
 
 8
 The plaintiffs in this case are former employees of PECo who retired between February 1 and June 1, 1987, and who were therefore ineligible to benefit from the change to the Plan. (Those employees who had scheduled retirement on July 1 were allowed to change their retirement date in order to take advantage of the change to the Plan, which became effective on August 1). As did the plaintiffs in Fischer, plaintiffs here allege that PECo breached its fiduciary duties under § 404 of ERISA; that PECo is estopped from denying the class members increased pension benefits; and that PECo engaged in discriminatory conduct in violation of § 510 of ERISA. After the class was certified, the parties cross-moved for summary judgment. The district court granted PECo's motion and denied plaintiffs' motion.
 
 
 9
 This appeal followed.
 
 Discussion
 
 10
 Our review of an order granting summary judgment is plenary. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "However, when the record is such that it would not support a rational finding that an essential element of the nonmoving party's claim or defense exists, summary judgment must be entered for the moving party." Turner v. Schering-Plough Corp., 901 F.2d 335, 341 (3d Cir.1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).
 
 
 11
 We held in Fischer that a plan administrator, in response to inquiries from plan participants, "may not make affirmative material misrepresentations ... about changes to an employee pension benefits plan." Fischer, 994 F.2d at 135. We held in addition that a company could not circumvent this obligation "by building a 'Chinese wall' around those employees on whom plan participants reasonably rely for important information and guidance about retirement." Id. at 135. It was thus irrelevant in Fischer, as it is here, that the responses PECo's benefits counselors gave to questions asked of them were truthful based on what the counselors themselves knew at the time. Fischer governs our approach in this case.
 
 
 12
 As in Fischer, the district court here granted PECo's motion for summary judgment because it found that plaintiffs "failed to produce any evidence" that PECo made affirmative material misrepresentations. For substantially the same reasons we gave in Fischer, we disagree.
 
 
 13
 PECo treated the members of the class in this case much as it did the class members in Fischer. For example, according to statements given in response to interrogatories, one plaintiff asked Counselor McCartney during a retirement interview in February 1987 "if anything was coming out in the August [retirement] package." McCartney "said no." Another employee recalled that in response to similar inquiries McCartney gave "a specific negative answer." Still another asked Vice-President Fritz--the PECo official responsible for recommending pension changes to PECo's CEO--about rumors of a change. Fritz said that "as far as he knew, there was nothing." This was sometime in March 1987, the same month in which Fritz remarked during his meeting with the IGA Executive Committee that "the timing was right to make a significant change to the pension plan."
 
 
 14
 Citing Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154 (6th Cir.1988), PECo argues that "no plan could be said to have been under 'serious consideration' until it was proposed to the Board for discussion" on June 16, 1987 and that plaintiffs have presented "no evidence of any affirmative misrepresentation[s]" after that time. In Fischer, we held that a plan administrator cannot make affirmative material misrepresentations to plan participants in response to direct inquiries and that "[i]ncluded within the overall materiality inquiry will be an inquiry into the seriousness with which a particular change to an employee pension plan is being considered at the time the misrepresentation is made." Fischer, 994 F.2d at 135-36. Under the analysis in Fischer, PECo's claim is that an affirmative misrepresentation is not material unless it is made after "serious consideration" has been given to a change and, furthermore, that a change can be said to have been "seriously considered" only after it has been formally proposed to the Board of Directors.
 
 
 15
 We recognize that such a bright-line rule would be easier to administer than the materiality standard embraced in Fischer. On the other hand, as the Supreme Court noted in another context, "[a]ny approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must necessarily be overinclusive or underinclusive." Basic Inc. v. Levinson, 485 U.S. 224, 236, 108 S.Ct. 978, 986, 99 L.Ed.2d 194 (1988). Tying "serious consideration" to a single objective event in the present context would work unfairly in some instances.
 
 
 16
 In Fischer, for example, PECo's proposed rule would have meant that the letter, sent by the Company CEO to all employees announcing that an early retirement plan would soon be proposed to the Board of Directors, could not have amounted to "serious consideration" since no proposal had as yet been submitted to the Board. Yet in that case PECo took it upon itself to voluntarily notify its employees about the anticipated change even before making a formal proposal to the Board. To us, this action suggests that PECo itself believed that fairness required not only that it answer employee inquiries truthfully but also that it actually disclose its plans without any specific inquiry, even though the bright-line rule it suggests here would not have been satisfied.
 
 
 17
 Though we reject the rule PECo proposes, we emphasize that PECo is entitled to argue to the trier of fact, among other things, that the statements it allegedly made were not material because, at the time those statements were made, the amendment to the plan was not under serious consideration. It must be kept in mind, however, that the ultimate inquiry is whether there is a "substantial likelihood" that the affirmative misrepresentation "would mislead a reasonable employee in making an adequately informed decision about if and when to retire." Fischer, 994 F.2d at 135-36.
 
 
 18
 In any event, the statements described above, like those in Fischer, are sufficient to preclude summary judgment as to whether or not PECo made any affirmative misrepresentations and as to whether or not those misrepresentations, if any, were material. Because the district court's decision to grant PECo's summary judgment motion on each of plaintiffs' three claims was based in part on its erroneous view that there was no evidence that PECo made affirmative material misrepresentations, summary judgment was improper. As in Fischer, we do not express any view on the merits of any of plaintiffs' claims.
 
 
 19
 Accordingly, we will reverse the judgment of the district court granting summary judgment to PECo and will remand the case for proceedings consistent with this opinion. For the same reasons, plaintiffs' request that we order the district court to enter summary judgment in their favor will be denied.
 
 
 20
 Before: EDWARD R. BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and FEINBERG,** Circuit Judges.
 
 SUR PETITION FOR REHEARING
 
 21
 July 20, 1993.
 
 
 22
 The petition for rehearing filed by appellees in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judges Stapleton, Hutchinson and Roth would grant rehearing.
 
 
 
 *
 Honorable Wilfred Feinberg of the United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 The named defendants are PECo, Charles L. Fritz, J.L. Everett, III, John H. Austin, Jr., and PECo's Service Annuity Plan. The defendants will be collectively referred to as "PECo."
 
 
 **
 Senior Circuit Judge Feinberg voted only as to panel rehearing